Bradley R. Marshall, acting *Pro Se*
1240 Winnowing Way
Suite 102
Mount Pleasant, South Carolina 29466
Telephone: 843 303-9532
Facsimile: 877 211-7549
Email: Brad@bmarshall.me

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CHARLESTON, SOUTH CAROLINA

| | |
|---|---|
| BRADLEY R. MARSHALL,<br><br>Plaintiff,<br><br>vs.<br><br>DEPARTMENT OF VETERANS AFFAIRS, THOMAS KRUG AND ROBERTO MADERO AND JOHN DOES 1-10<br><br>Defendants. | Case No. 2:24-CV-4208-RMG-MGB<br><br>COMPLAINT FOR BREACH OF CONTRACT AND TO RECOVER DAMAGES |

Plaintiff, based upon information and belief, state as follows:

## I. INTRODUCTION

The practice of law is a great and noble calling. Disbarred attorneys, who have been prohibited from practicing law as licensed practitioners, before state and federal courts, must serve their punishment before they can resume their work as licensed practitioners. However, disbarred attorneys are permitted to serve as a lay representatives before federal administrative tribunals[1].

---

[1] For example, see the Treasury Department (Internal Revenue), 23 Stat. 258 (1884), 5 U.S.C. § 261 (1958); 31 C.F.R. §§ 10.1-.94 (1959); the Interstate Commerce Commission, 54 Stat. 913 (1940), 49 U.S.C. § 17 (12) (1958); 49 C.F.R. §§ 1.7-.13 (1962); and the Patent Office, 35 U.S.C. §§ 31-33 (1958); 37 C.F.R. §§ 1.341-.348 (1960); those agencies most directly affected are the United States Tax Court, 68A Stat. 884 (1954), 26 U.S.C. § 7453 (1958); 26 C.F.R. § 701.2 (1961); the Federal Maritime Commission, 49 Stat. 1987 (1936), 46 U.S.C. § 1114(b) (1958); 46 C.F.R. § 201.26 (1963); the General Accounting Office, 42 Stat. 25 (1921), 31 U.S.C. § 52 (1958); 4 C.F.R. §§ 1.1-1.8 (1961); and the Veterans Administration, 49 Stat. 2031 (1936), 38 U.S.C. §§ 3401-05 (1958); 38 C.F.R. §§ 14.626-.663 (1957).

1

Former attorneys, who serve as lay representatives, provide an invaluable service to the public. Perhaps this is why Congress has authorized most anyone, but particularly those with specialized training, to represent the citizenry. Such service to the public provides disbarred attorneys with the wonderful opportunity to be of service to the public while they rehabilitate themselves and preserve the integrity of the profession. However, there are some amongst us who do not believe a disbarred attorney should ever be allowed to utilize their training in any capacity, no matter what.

Plaintiff, Bradley R. Marshall was born in 1957 in Seattle, Washington. His father was a pastor and his mother a homemaker. Mr. Marshall is African-American. He earned a Bachelor of Arts degree in English Literature from the University of Washington in 1980 and a Juris Doctorate degree from the same university in 1984. Inspired by Thurgood Marshall and the legal victory that Justice Marshall won in *Brown v. Board of Education*, Mr. Marshall decided to dedicate his life to practicing law. Marshall felt his career was a calling, a double opportunity to work for what he considered to be right and to challenge what he considered wrong; he felt he could best accomplish this by practicing law. After passing the bar exam in 1986, Marshall took a job in with a firm in Seattle. He eventually began representing professional athletes and victims of wrongfully shootings by poorly trained police officers in Seattle. In his first notable case, Mr. Marshall represented an African-American family who sued police officers who killed their father, who found himself in the wrong neighborhood at the wrong time. Though Marshall lost the case, it became a turning point in his career. Rather than seeing the case as a defeat, Marshall realized the trial itself had given hope to so many in his community.

Marshall's work generated a variety of opinions about him. United States Congressman Danny Davis commented on Marshall: "Each year at the annual conference of the Congressional Black Caucus, I conduct workshops related to our justice system. During the workshops and in subsequent discussions, I have met and gotten to know Bradley. He is a rare personality in that he is

2

fearless in his effort to protect the rights of all citizens, as a result of his work...I invited him to speak before the Black Caucus."

Professor Richard Dunn commented: "As a university professor and administrator for over 40 years, I have known many students and have remained very interested in their professional and working lives. There is none for whom I have more respect and in whom I place more trust than Bradley."

Mr. Ellison Bennett, the Past President of the Southern Christian Leadership Conference, Pensacola Chapter stated: "I am a native of Escambia, Florida. I am a former member of the Haines City Police Department and also a former city commissioner in Haines City. I am now the immediate Past President of the Southern Christian Leadership Conference, Pensacola Chapter. I have known Bradley Marshall of CHARTMANS INC professionally and as a friend for a number of years. Originally, members of the Congressional Black Caucus referred us to Mr. Marshall in connection with a matter of some importance. I have found Mr. Marshall to be a tireless worker, a dogged advocate and a strong spokesman for the downtrodden. Mr. Marshall has worked throughout the South, in Florida, Alabama, Mississippi and other locations on civil and human rights. Mr. Marshall and I attended together the anniversary of "Bloody Sunday" in Selma, Alabama, which commemorated Dr. Martin Luther King's March 7, 1965 march in Selma when 600 civil rights marchers were attacked by state and local police with Billy clubs and tear gas. The thing that impresses me the most about Mr. Marshall is simply his willingness to help people."

Marshall's law practice mainly consisted of fighting for the "little guy", those people who are under-represented in our society. He has represented individuals against police departments, state and municipal governments and corporate employers in Washington, California, Arizona, Missouri,

3

Connecticut, Texas, Louisiana, Florida and Michigan. One characteristic in which Marshall has prided himself over the years is that he does not give up.

In 2009, Marshall was disbarred by the Washington State Supreme Court because he filed an attorney's lien on a client who refused to pay a contingency fee after he successfully prosecuted a civil complaint on her behalf in a 12-day jury trial. The state court claimed Marshall "bullied" his client when he filed the attorney lien.

The shame and disappointment and the growth and reflection that resulted from his disbarment is discussed on Marshall's company's website (News and Events page at Chartmans.com) and in various internet publications where Marshall writes: "[M]y story should remind us that no matter who we are or where we come from, we all make mistakes in the middle of good intentions and we all have the ability to overcome mistakes. We are all a part of something greater---something more consequential---we are part of the American family. My experience has taught me that in a country where every race, age, faith and point of view can be found, we are still bound together as one people; we share common hopes and a common creed; we share a common destiny; and that destiny can only be realized if we understand our own humanity."

Following Marshall's disbarment, he began serving as a lay representative before various federal agencies, including the Equal Employment Opportunity ("EEOC"), where he represented federal workers and contractors overseas and within the United States. However, Marshall's work as a lay representative was met with hostility by several attorneys employed by DODEA and several administrative judges employed by the EEOC.

Unfortunately, several agency attorneys and their staff, in this case, decided that a disbarred attorney should not be allowed to serve as a lay representative because it dilutes the punishment of Marshall's disbarment. They further sought to undermine Marshall's ability to represent federal

4

workers. In the context of federal sector EEO claims, federal attorneys play a unique role in society as both zealous advocates for their governmental clients and as officers of the Commission. Agency lawyers must balance the duty to fight for their clients with the responsibility to uphold the rule of law for complainants and those who represent complainants. Put another way, federal lawyers have a duty towards the government, the individual complainant, representatives and to society generally. These responsibilities often complement each other, but they may also conflict.

The VA attorneys in this case tortiously interfered in the contractual relationship between Marshall and his clients by encouraging the latter to not pay Marshall for the services he provided them, by turning over the funds earned by Marshall to his clients and in other ways as more fully described below.

## II. PARTIES, JURISDICTION & VENUE

1.  Plaintiff Bradley R. Marshall (hereafter referred to as "Plaintiff" or as "Marshall") incorporates by reference all preceding paragraphs of this Complaint, as if fully restated herein.

2.  Plaintiff Marshall resides at 3814 Colonel Vanderhorst Circle, Mount Pleasant, South Carolina. The plaintiff has exhausted all administrative remedies and performed all conditions precedent to the maintenance of this action and is in all other respects fully qualified to maintain this action.

3.  Defendant United States Department of Veterans Affairs (hereinafter referred to as "Defendant" or "VA") is a federal agency under the United States, having its principal office and place of business located at 810 Vermont Ave., NW Washington, DC 20420.

4.  Defendant Denis R. McDonough (hereinafter referred to as "McDonough") was, at all times relevant to this action, the Director and official Agency head, having his principal office and place of business located at 810 Vermont Ave., NW Washington, DC 20420.

5. Defendant Sophia Hayes (hereinafter referred to as "Hayes") was at times relevant to this action a supervisory attorney with the Office of General Counsel, having her principal office and place of business located at 1700 Clairmont Roa, Decatur, GA 30030.

6. Defendant Tsopei T. Robinson (hereinafter referred to as "Robinson") was at times relevant to this action, a staff attorney with the Office of General Counsel, for VA, having her principal office and place of business located at 7305 N. Military Trail West Palm Beach, FL 33410.

7. Defendant Caroline Johnson (hereinafter referred to as "Johnson") was, at all times relevant to this action, a staff attorney with the Office of General Counsel, for VA, having her principal office and place of business located at 7305 N. Military Trail West Palm Beach, FL 33410.

8. Defendant Teri Walker (hereinafter referred to as "Walker") was, at all times relevant to this action, a staff attorney with the Office of General Counsel, for VA, having her principal office and place of business located at 7305 N. Military Trail West Palm Beach, FL 33410.

9. Defendant Thomas Krug (hereinafter referred to as "Krug") is an individual who resides at 5204 Hammock Circle, Saint Cloud, Florida 34771.

10. Defendant Roberto Madero (hereinafter referred to as "Madero") is an individual who resides at 1234 Timberbend Circle, Orlando, Florida 32824.

11. John Does 1-10 are persons and/or companies yet to be identified who may in whole or in part be liable for all or part of the claims set forth herein as may be revealed in discovery or investigation and/or who may be found to be necessary parties to this action.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, since this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, *exclusive* of interest and costs.

13. Jurisdiction is also conferred on the court by virtue of the fact the plaintiff brings this action under the Federal Tort Claims Act and 28 U.S.C 1346 ("FTCA") and by virtue of the fact that plaintiff brings claims under the Constitution or laws of the United States.[1]

14. Venue is proper because the principal Defendants contracted or otherwise were doing business in the State of South Carolina.

### III.  BACKGROUND RELATED TO THOMAS KRUG

15. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, as if fully restated herein.

16. On or about February 28, 2019 and June 10, 2022, Mr. Krug, an employee with the Department of Veterans Affairs at Orlando, Florida ("OVAMC"), contacted Mr. Bradley R. Marshall, a federal Designated Representative, to represent his in two Federal Sector Equal Employment Opportunity Commission ("EEOC") actions against his employer for discrimination.

17. Mr. Krug and Mr. Marshall entered into a legally binding representation agreement, wherein Mr. Marshall agreed to represent Mr. Krug in all phases of the complaint process through hearing and Mr. Krug agreed to make a flat fee payment of $7,500.00 and $5,000.00 and pay Marshall 30% of any recovery he obtained on his behalf. See attached Representation Agreement marked as EX A.

18. Over the course of three-and-one-half years, Mr. Marshall diligently litigated the case on behalf of his client. He assisted in the preparation of the Report of Investigation; propounded written discovery requests; assisted his client in responding to discovery requests; conducted more than 6 depositions; interviewed dozens of witnesses; reviewed investigative materials; prepared

---

[1] See attached claim form.

motions and counter-motions; including a dispositive motion, prepared the case for hearing on liability and opposed an agency motion for dismissal, all in an effort to prevail on behalf of Mr. Krug.

19. On July 11, 2023, Mr. Krug's case was called for hearing. On the same day, just prior to convening the hearing, Mr. Krug agreed to participate in further settlement discussions with the agency. Following more than one hour of negotiations, Mr. Krug agreed to settle his case. Thereafter, the Honorable Judge Kimberley Greenleaf held a conference confirming settlement of the case for, among other things, a lump sum payment in the amount of $62,500.00. A few hours later, the agency's representative sent a settlement agreement for review by Mr. Marshall and Mr. Krug. See Settlement Agreement marked as Exhibit B.

20. Mr. Krug was unhappy with the settlement but made clear he did not want to risk a hearing. Mr. Krug assured Mr. Marshall he would make timely payment as soon as he received the settlement funds. However, despite his assurances and after requests were made for payment, Defendant Krug has failed to make payment in violation of the written agreement. See attached Demand Letter marked as Exhibit C.

21. Mr. Marshall advised Mr. Krug was not required to consummate the agreement, as the same had not yet been signed. Mr. Marshall also advised Mr. Krug that he could proceed to hearing if you chose to do so. However, shortly thereafter, Mr. Krug failed to respond to Mr. Marshall's numerous emails, telephone calls and text messages. Mr. Marshall also sent the attached Request for Guidance, which informed the tribunal of, among other things, the lack of communication by Mr. Krug.

22. It is believed that Mr. Krug decided to not pay for the services he received from Mr. Marshall in order to increase his net recovery.

23. After consummating the settlement and concluding the case, Mr. Krug was encouraged to not communicate with Mr. Marshall by agency attorneys while they made disparaging statements about Mr. Marshall. Meanwhile, Mr. Marshall submitted an invoice. See attached invoice marked as Exhibit D.

### IV.  BACKGROUND RELATED TO ROBERTO MADERO

22. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, as if fully restated herein.

23. On or about January 18, 2021, Mr. Madero, an employee with the Department of Veterans Affairs at Orlando, Florida ("OVAMC"), contacted Mr. Bradley R. Marshall, a federal Designated Representative, to represent his in a Federal Sector Equal Employment Opportunity Commission ("EEOC") action against his employer for discrimination.

24. Mr. Madero and Mr. Marshall entered into a legally binding representation agreement, wherein Mr. Marshall agreed to represent Mr. Madero in all phases of the complaint process through hearing and Mr. Madero agreed to make a flat fee payment of $7,500.00 and pay Marshall 30% of any recovery he obtained on his behalf. See attached Representation Agreement marked as EX E.

25. Over the course of two-and-one-half years, Mr. Marshall diligently litigated the case on behalf of his client. He assisted in the preparation of the Report of Investigation; propounded written discovery requests; assisted his client in responding to discovery requests; conducted more than 4 depositions; interviewed dozens of witnesses; reviewed investigative materials; prepared motions and counter-motions; including a dispositive motion, prepared the case for hearing on liability and opposed an agency motion for dismissal, all in an effort to prevail on behalf of Mr. Madero.

26. On June 23, 2023, Mr. Madero, after participating in a mediation, agreed to settle his case. Thereafter, the Honorable Judge Mary Jo Mosca issued a final decision in furtherance of the

settlement agreement. The following relief was obtained on behalf of Mr. Madero: Prior to the beginning of the hearing, you decided to resolve your case through mediation as follows: a lump sum payment in the amount of $50,000 and restoration of leave between December 14, 2020 and June 13, 2023 related to non-selection, and not to exceed 60 days. See Exhibit F.

27. After consummating the settlement and concluding the case, Mr. Madero has refused to communicate with Mr. Marshall. Meanwhile, Mr. Marshall submitted an invoice. See attached invoice marked as Exhibit G.

28. Mr. Madero assured Plaintiff that he would make timely payment as soon as he received the settlement funds. However, despite his assurances and after requests were made for payment, Defendant Madero has failed to make payment in violation of the written agreement. See attached Demand Letter marked as Exhibit H.

29. It is believed that Mr. Krug and Mr. Madero have conspired to not pay for the services they received from Mr. Marshall in order to increase their net recovery.

30. After consummating the settlement and concluding the cases, Mr. Krug and Mr. Madero have refused to communicate with Mr. Marshall.

## V. BACKGROUND RELATED TO VA

31. Plaintiff incorporates by reference all preceding paragraphs of this Complaint, as if fully restated herein.

32. During settlement negotiations, the VA tortiously interfered with Marshall's business relationships and contracts by: (1) urging clients to terminate Marshall's services; (2) urging clients to not pay Marshall for the services he provided under the contract formed; (3) refusing to facilitate a payment mechanism for Marshall's services; and in other ways which discovery will reveal.

33. Mr. Marshall has at all times complied with federal law and applicable regulations, and have offered counseling and services to individuals in a manner consistent with his obligations under

the EEOC regulations. As a result of his work, Mr. Marshall has secured substantial recoveries for his clients throughout the country and abroad.

### COUNT-- I TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP OR EXPECTANCY

34. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

35. At all times relevant to this Complaint, Plaintiff's ability to successfully represent his clients' interests depended on business transactions, interactions, existing relationships, and existing expectancies with a number of agency attorneys, supervisors and agency staff.

36. The VA is a sophisticated actor in the litigation of claims involving federal employees and contractors. Accordingly, the VA and its agents, attorneys, financial support staff and supervisors – knew about these relationships and expectancies.

37. Further, the VA knew of Plaintiff's business relationships and business expectancies. Like thousands of attorneys and designated representatives throughout the country, their ability to render services, do business, and represent the interests of their clients depends on successful business dealings with attorneys and representatives.

38. The statements made and action undertaken by agency attorneys or staff to Marshall's clients, where disparaged Marshall and implied his clients did not did not need to pay Marshall for his services, including the actions referenced above were tortious, illegal, or otherwise wrongful and were engaged in when they knew their actions were improper, and malicious.

39. As a direct and proximate result of the VA's wrongful conduct, Plaintiff has suffered substantial economic injury, loss of goodwill, harm to his designated representative reputation, loss of esteem and standing in the federal administrative community, and loss of business opportunities.

### COUNT II - BREACH OF CONTRACT.

40. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

41. Krug and Madero breached the written fee agreements with Plaintiff by failing to pay the fee and expense reimbursement that became due when the received Administration. Krug and Madero breached the contract with Plaintiff, including breaching their duties of good faith and fair dealing, express and implied, by diverting or withholding fee and expense money and by refusing to remit the balance due to the Plaintiff.

42. Plaintiff request an award of compensatory damages in an amount of at least $83,000.00 plus interest and costs.

43. Krug and Madero representations to Marshall regarding their intent to remit payment were false.

44. The representations were false representations of material fact, made to delay payment or to avoid payment altogether.

### COUNT III - PROMISSORY FRAUD

45. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

46. Marshall reasonably and justifiably relied on these promises to his detriment.

47. More specifically, after the settlement had been entered in favor of Krug and Madero against the VA, the VA contacted Marshall to assist the VA in the consummation of the settlement agreements. Marshall facilitated the execution of the paperwork as to Madero and sought to assist the same with respect to Krug. Krug and Madero assured Marshall that they would promptly pay the amount due upon their receipt of said funds.

48. Krug and Madero sought to reduce the amount owing for the contingency amount at different times during the final days of the settlements. Krug and Madero, however, expressly or

implicitly promised to hold the funds temporarily and to pay the amount due to the Plaintiff promptly upon the occurrence of the deposit of the funds into their bank accounts.

49. Krug and Madero made these promises with the intention of inducing reliance by Marshall and doing so for the purpose of delaying or avoiding payment. Unbeknownst to Marshall, when Krug and Madero made these promises to Marshall, they had conspired to not make payment and did not intend to distribute the compensation owed to Marshall.

### COUNT IV - CONVERSION

50. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

51. Plaintiff has a general and special interest in the VA funds that Krug and Madero diverted, converted, and kept for their own use and benefit.

52. Krug and Madero, after demand for payment, refused to surrender possession of the portion of the funds received that represented the contractual amount owing to Marshall.

53. Krug and Madero substantially departed from the mutually agreed upon use of the settlement funds; specifically, they promised and agreed to hold the funds temporarily and they promised promptly to remit the balance due.

54. Krug and Madero wrongfully exercised dominion and control over the VA funds paid to them, including those portions in which the Plaintiff had a legal, contractual and equitable interest. Krug and Madero did so in a manner that (a) was inconsistent with the rights of the Plaintiff and their conduct amounted to a conversion.

55. Krug and Madero wrongful taking and wrongful detention of the funds.

56. Accordingly, Plaintiff requests an award of both compensatory and punitive damages in an amount of at least $88,998.00 plus interest and costs.

### COUNT V - WORK AND LABOR DONE

57. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

58. Plaintiff and Krug and Madero were parties to both a written fee agreement and an implied contract for the handling and distribution of the funds paid to Krug and Madero by the VA.

55. A suit for work and labor done is an action on a promise to pay fair and reasonable compensation for services rendered to another which are knowingly accepted.

56. Plaintiff provided valuable legal services to Krug and Madero.

57. Krug and Madero also knowingly accepted the funds paid to them by the VA.

58. Plaintiff request an award of all available damages including compensatory damages in an amount of at least $88,998.00 plus interest and costs.

### COUNT II - BREACH OF CONTRACT.

59. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

60. Krug and Madero have not objected to the amount demanded in the revised final invoice; due on the account.

61. The demand for payment combined with Krug and Madero correctness and accuracy, thus rendering them liable for the balance due.

62. Plaintiff requests an award of all available damages on account stated in an amount of at least $83,000.00 plus interest and costs.

### COUNT VI-- UNJUST ENRICHMENT

63. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

64. Plaintiff consolidate Money Had and Received and Unjust Enrichment as a single count because the two theories have been consolidated into one consolidated theory.

65. Krug and Madero have made it clear they do not intend to payment for services rendered. - and Krug and Madero presently or soon will hold money - which in equity and good conscience, belongs to Plaintiff.

66. Krug and Madero exercise of improper retention, custody and control of the subject funds were all coercion, conversion, fraud, or the abuse of a confidential relationship.

67. Krug and Madero unjustly enriched themselves at the expense of the Plaintiff.

68. Plaintiff requests an award of all available damages wrongful conduct in an amount of at least $83,000.00 plus interest and costs.

### COUNT VII-- CONSTRUCTIVE TRUST

69. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

70. The judgment funds paid to Krug and Madero, which they have or shortly will possess are at risk of waste or misappropriation as well as ongoing unjust enrichment.

71. Constructive trusts may be judicially imposed to prevent unjust enrichment and to prevent injustice.

72. Krug and Madero, unjust, unlawful conduct, characterized by abuse of a confidential relationship, abuse of a fiduciary or quasi-fiduciary relation, resulted in the creation of the situation in which the parties are at present: Krug and Madero presently or soon will possess funds in which the Plaintiff have a legal and equitable interest.

73. Plaintiff request that the Court impose a constructive trust to prevent further injustice, waste, or misuse of the subject funds and that the trust be imposed upon Krug and Madero such that they are required to protect to preserve and protect the disputed funds and to refrain from wasting or spending the disputed funds.

74. In the alternative, plaintiffs request that the Court require Krug and Madero to deposit all of the disputed funds into Court to be held while this litigation is pending.

### COUNT VIII-- BREACH OF IMPLIED COVENANT OF GOOD FAITH A:"ID FAIR DEALING

75. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76. Marshall, Krug and Madero are parties to Representation Agreements, which are valid, enforceable and supported by adequate consideration. Marshall complied with his obligations under the Agreements. Any and all conditions required for Madero and Krug's performance under the Agreements occurred and/or were satisfied. The purpose of the Agreements was for the prosecution of Federal Sector EEO Complaint and to recover damages on behalf of and against Defendants.

77. Defendants' conduct violates the implied covenant of good faith and fair dealing. Indeed, such conduct violates the spirit of the Agreement and hinders the intent of the parties as contemplated by the Agreement.

### PRIOR EFFORTS TO RESOLVE THIS MATTER

78. Plaintiff incorporate by reference all preceding paragraphs of this Complaint, as if fully restated herein.

79. Before bringing suit, Marshall made extensive good faith efforts to resolve these disputes through out-of-court discussions.

80. Among other things, during this time period Marshall filed a federal tort claim with the VA and tried to discuss with the agency resolution without success. Marshall also sent a letter to Madero and Krug regarding payment. Unfortunately, Madero and Krug have ignored all such efforts to resolve this matter.

81. Plaintiff prays that this Court enter judgment for the Plaintiff and against the VA, Krug and Madero:

A. compensatory, incidental and consequential damages available at law;

B. economic losses on all claims allowed by law;

C. special damages;

D. mental anguish damages;

E. punitive damages;

F. including expert witness fees, on all claims allowed by law;

G. pre- and post-judgment interest at the lawful rates;

H. imposition of a constructive trust (or retention of the funds by the Court pending the outcome of this litigation); and

I. any further relief that this Court deems just and proper, as well as any other appropriate relief at law and equity.

July 30, 2024

Respectfully submitted,

By: _____

BRADLEY R. MARSHALL, acting *pro se*
1240 Winnowing Way
Suite 102
Mt. Pleasant, South Carolina 29403
Telephone: 843 303-9532
Facsimile: 877 211-7549
Email: Brad@bmarshall.me