UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Bradley R. Marshall, | ) | Case No. 2:24-cv-04208-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| United States of America, | ) | |
| Department of Veterans Affairs, | ) | |
| Thomas Krug, Robert Madero, | ) | |
| Douglas A. Collins,[1] John Does 1–10, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Bradley R. Marshall ("Plaintiff"), proceeding *pro se*, brings this civil action alleging breach of contract, among other claims. (Dkt. No. 1.) Before the Court is a Motion to Dismiss filed by Defendants Thomas Krug and Robert Madero (Dkt. No. 32), and a Motion to Dismiss filed by Defendants United States of America, Douglas A. Collins, and the Department of Veterans Affairs (the "VA") (Dkt. No. 42). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons set forth herein, the undersigned recommends the Court grant both Motions to Dismiss.

**BACKGROUND**

This action arises from representation Plaintiff provided to Defendants Krug and Madero in their respective Equal Employment Opportunity Commission ("EEOC") actions against their employer, "the Department of Veterans Affairs at Orlando, Florida." (Dkt. No. 1 at 7, 9.) Plaintiff,

---

[1] Douglas A. Collins became the Secretary of Veterans Affairs on February 5, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Douglas A. Collins should be substituted for Denis R. McDonough as a defendant in this action.

1

a resident of Mount Pleasant, South Carolina, is a disbarred attorney, and he provided his services to Krug and Madero as a lay representative. (*Id*. at 1–2, 4–5.) On February 28, 2019, and June 10, 2022, Defendant Krug, a resident of Saint Cloud, Florida, contacted Plaintiff to represent him in two EEOC actions against the VA for discrimination. (*Id*. at 6–7.) Plaintiff agreed to represent Krug for a "flat fee payment of $7,500.00 and $5,000.00" and pay a 30% contingency fee for any recovery obtained on his behalf. (*Id*.) After "three-and-one-half years," during which Plaintiff "diligently litigated the case on behalf of his client," Krug settled his case for $62,500 on July 11, 2023. (*Id.* at 7–8.) Despite his assurances to Plaintiff that he "would make timely payment as soon as he received the settlement funds," Krug has not "made payment in violation of the written agreement." (*Id*. at 8.) Plaintiff has attached to the Complaint a "Representation Agreement" with Krug, as well Krug's settlement agreement. (Dkt. Nos. 1-2; 1-3.)

On January 18, 2021, Defendant Madero, a resident of Orlando, Florida, likewise contacted Plaintiff to represent him in two EEOC actions against the VA for discrimination. (Dkt. No. 1 at 6, 9.) Plaintiff agreed to represent Madero in return for a flat fee of $7,500 and a 30% contingency fee for any recovery obtained on his behalf. (*Id*.) After "two-and-one-half years," during which Plaintiff "diligently litigated the case on behalf of his client," Madero settled his case for $50,000 on June 23, 2023. (*Id.* at 9–10.) Despite his assurances to Plaintiff that he "would make timely payment as soon as he received the settlement funds," Madero has not made "payment in violation of the written agreement." (*Id*. at 10.)

The Complaint alleges that the VA "tortiously interfered with [Plaintiff's] business relationships and contracts by: urging clients to terminate [Plaintiff's] services; (2) urging clients to not pay [Plaintiff] for the services he provided under the contract formed; [and] (3) refusing to facilitate a payment mechanism for [Plaintiff's] services." (*Id*.)

Based on the foregoing conduct, the Complaint brings eight causes of action: (1) "tortious interference with business relationship or expectancy"; (2) "breach of contract";[2] (3) "promissory fraud"; (4) "conversion"; (5) "work and labor done"; (6) "unjust enrichment"; (7) "constructive trust"; and (8) "breach of implied covenant of good faith and fair dealing." (*Id*. at 11–16.) Only the claim for "tortious interference with business relationship or expectancy" is asserted against the federal Defendants; the remaining causes of action are brought only against Krug and Madero. The Complaint seeks an award of both compensatory and punitive damages from Krug and Madero "in an amount of at least $88,998.00 plus interest and costs." (*Id*. at 13.)

Plaintiff filed this action on July 30, 2024. On January 16, 2025, Defendants Krug and Madero, both appearing *pro se*, filed a Motion to Dismiss. (Dkt. No. 32.) The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 33.) Plaintiff filed a response in opposition on February 7, 2025 (Dkt. No. 41), and Defendants Krug and Madero did not file a reply brief. On February 20, 2025, Defendants Collins, United States of America, and the VA (collectively, "federal Defendants") filed a Motion to Dismiss. (Dkt. No. 42.) The next day, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 46.) Plaintiff filed a response in opposition on March 4, 2025 (Dkt. No. 48), to which the federal Defendants filed a reply on March 18, 2025 (Dkt. No. 53). Both Motions are ready for review.

---

[2] Although Complaint alleges two counts of "breach of contract," both appear to be based on the same conduct by Defendants Krug and Madero. (*Id*. at 11–12, 14.)

**DISCUSSION**

A.  **Motion to Dismiss by Defendants Krug and Madero (Dkt. No. 32)**

In their Motion to Dismiss, Krug and Madero ("Moving Defendants") argue that the claims against them should be dismissed "because this Court lacks personal jurisdiction over them. (Dkt. No. 32.) According to Defendants, "services were all through Florida," and they "have lived in Florida during the service agreement during the short time of working with [Plaintiff]." (*Id*. at 1.) The undersigned first considers the applicable standards before analyzing this argument for dismissal.[3]

1.  **Standards**

A defendant may bring a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Courts must make a separate personal jurisdiction determination as to each defendant who raises the issue. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Once a defendant makes such a motion, the plaintiff bears the burden of establishing personal jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 267–68 (4th Cir. 2016). When the Court evaluates personal jurisdiction based solely upon the motion papers, affidavits, memoranda, and complaint, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion to dismiss. *Id*. at 268. The Court, in such an analysis, must take the relevant allegations and evidence in the light most favorable to the plaintiff. *Id*. at 268.

Personal jurisdiction over an out-of-state defendant may be either general or specific. "[A] court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of 'continuous and systematic' activities in the forum state" than what

---

[3] Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

is required to establish specific jurisdiction. *Tire Engineering and Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

On the other hand, as to specific jurisdiction, the Court must perform a two-step analysis. The Court must first determine whether the forum state—here, South Carolina—long-arm statute provides a basis for asserting jurisdiction over the defendant. *Young v. FDIC*, 103 F.3d 1180, 1191 (4th Cir. 1997). Then, the Court must determine that the exercise of personal jurisdiction fails to violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.*

South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. *Foster v. Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).

To evaluate the due process requirements for asserting personal jurisdiction, the Fourth Circuit has established a three-part test in which courts consider the following: (1) the extent to which the defendant purposefully availed himself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the forum state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citation omitted).

**2.     Analysis**

Because Moving Defendants are not domiciled in South Carolina (*see* Dkt. No. 1 at 6), general personal jurisdiction is nonexistent. Accordingly, the undersigned focuses the analysis on whether specific personal jurisdiction exists over these Defendants.

Upon review, Plaintiff fails to make his requisite prima facie showing. In his response brief, Plaintiff does not expressly argue personal jurisdiction exists over either Krug or Madero, and largely restates his allegations involving Krug. (Dkt. No. 41.) According to Plaintiff, Krug "contacted Mr. Marshall, a federal designated representative based in Mount Pleasant, South Carolina, and requested he represent him" in two EEOC actions. (*Id*. at 1.) Plaintiff claims that "[a]ll work on behalf of Mr. Krug was performed from Mr. Marshall's Mount Pleasant offices" over the course of "three-and-one-half years." (*Id*. at 2.)

Here, the Moving Defendants' connection to South Carolina is not substantial enough to demonstrate purposeful availment. As an initial matter, the mere contracting with a resident of the forum state does not itself subject a defendant to personal jurisdiction. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 191 (4th Cir. 2016) (rejecting a "bright-line rule" that "all contracts creating continuing obligations with a party in the forum state require a finding of purposeful availment"). Instead, because the minimum contacts requirement "is not susceptible of mechanical application," *Consulting Eng'rs*, 561 F.3d at 278 (citing *Int'l Shoe*, 326 U.S. at 319), a court's analysis is "flexible" and "proceeds on a case-by-case basis," considering the "qualitative nature of each of the defendant's connections to the forum state[,]" *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012).

While Krug and Madero both initiated the relationship with Plaintiff, a South Carolina lawyer, there are no allegations that Plaintiff was retained *because* he resided in South Carolina.

*See Waseem v. Stability AI, Inc.*, No. 2:24CV36, 2024 WL 4580401, at *6 (E.D. Va. Oct. 10, 2024) (finding purposeful availment not satisfied in part because the plaintiff "neither alleges that the Stability Defendants recruited and hired him because he was a resident of Virginia, nor does he even allege they considered his residency in doing so. Instead, the parties contracted for [plaintiff] to perform work for the Stability Defendants, and it so happened that he lived in Virginia"), *adopted by*, 2024 WL 5168098 (E.D. Va. Dec. 19, 2024); *see also Berry v. Secure Relationship, LLC*, No. 2:22-cv-02815-DCN, 2022 WL 16720115, at *4 (D.S.C. Nov. 4, 2022) ("The solicitation factor is significantly outweighed when the plaintiff does not allege that "[the employer] recruited h[im] for h[is] job because [ ]he resided in [the forum state]." (quoting *Perry v. Nat'l Ass'n of Home Builders of U.S.*, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020) (concluding that there was no purposeful availment because, among other things, the plaintiff "ha[d] not alleged that [defendant] recruited her for her job because she resided in Maryland"))). Indeed, Krug's representation agreement indicates an understanding that Plaintiff would need to travel out-of-state at times, stating the "client" is "responsible for expenses" which "will include travel, hotel accommodations and transcription costs for depositions." (Dkt. No. 1-2 at 2.)

In short, it appears Plaintiff's residency in South Carolina was merely incidental to his representation of Moving Defendants, who sought Plaintiff's representation in EEOC actions against their employer in Florida. To find personal jurisdiction exists on such a tenuous basis would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316; *see Consulting Eng'rs*, 561 F.3d at 277–78 (4th Cir. 2009) ("Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" (quoting

7

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997))); *see also Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018) ("Plaintiff's choice to complete her work in North Carolina for her own reasons is a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business [there]."), *aff'd*, 770 F. App'x 77 (4th Cir. 2019). Accordingly, the undersigned finds neither Krug nor Madero purposefully directed their activities at South Carolina such that exercise of jurisdiction would comport with due process.

Because Plaintiff has not satisfied this first prong of the test for specific jurisdiction, further consideration of prongs two and three is unnecessary. *Consulting Eng'rs*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to consideration of prongs two and three."). Based on the foregoing, the undersigned recommends Moving Defendants' Motion to Dismiss be granted[4] for lack of personal jurisdiction.[5]

### B.   Federal Defendants' Motion to Dismiss (Dkt. No. 42)

In their Motion to Dismiss, federal Defendants assert that "the United States should be the sole federal Defendant" because Plaintiff's claims against the VA are brought under the FTCA. (Dkt. No. 42 at 1 n.3.) Plaintiff appears to consent. (*See* Dkt. No. 48). Accordingly, the Court recommends the VA and Collins, as the Secretary of the VA, be dismissed as Defendants in this

---

[4] Moving Defendants also argue for dismissal because Plaintiff previously filed a lawsuit against them in the United States District Court for the Middle District of Florida, and that action was dismissed. (Dkt. No. 32; 32-1.) The record shows the Florida district court dismissed Plaintiff's action "without prejudice for failure to comply" with the requirement to file "a case management report within forty days after any defendant appears." (Dkt. No. 32-1.) Because the Florida lawsuit was dismissed without prejudice, it does not provide a separate basis for dismissal of the claims against Moving Defendants. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503–06 (2001) (holding that an adjudication on the merits is "the opposite of a 'dismissal without prejudice,'" and that the "primary meaning of 'dismissal without prejudice' . . . is dismissal without barring the plaintiff from returning later").

[5] The dismissal of a case for lack of personal jurisdiction is without prejudice because "such a dismissal does not dismiss the case on the merits." *Pandit v. Pandit*, 808 F. App'x 179, 183 n.3 (4th Cir. 2020).

action. *See* 28 U.S.C. § 2679(b)(1) (stating tort "remedy against the United States . . . is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim . . . "); *McDaniels v. United States*, No. 4:07-3386-TLW, 2009 WL 212414, at *3 (D.S.C. Jan. 28, 2009) (noting "agencies cannot be sued under the FTCA").

Federal Defendants further argue that the Court lacks subject matter jurisdiction over Plaintiff's tortious interference claim asserted against them. (Dkt. No. 42.) Dismissal is warranted under Rule 12(b)(1) for any claims over which the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009). A Rule 12(b)(1) motion to dismiss should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

As discussed above, the Complaint alleges a single claim against federal Defendants for "tortious interference with business relationship or expectancy." (Dkt. No. 1 at 11.) According to the Complaint, the VA "tortiously interfered with [Plaintiff's] business relationships and contracts by: urging clients to terminate [Plaintiff's] services; (2) urging clients to not pay [Plaintiff] for the services he provided under the contract formed; [and] (3) refusing to facilitate a payment mechanism for [Plaintiff's] services." (*Id*. at 10.)

The United States is immune from all suits against it unless it has expressly waived sovereign immunity. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The Federal Tort Claims Act ("FTCA") is a limited waiver

of sovereign immunity "for certain torts committed by federal employees" while they were acting in the scope of their employment. *FDIC v. Meyer*, 510 U.S. 471, 475, 476–77 (1994) (citing 28 U.S.C. § 1346(b)(1)). The statute imposes tort liability on the United States "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, and to the extent that "a private person[ ] would be liable to the claimant in accordance with the law of the [state] where the act or omission occurred," 28 U.S.C. § 1346(b)(1).

There is an exemption to this waiver of sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h); *Ready Transp., Inc. v. Mil. Traffic Mgmt. Command*, 86 F. App'x 561, 565–66 (4th Cir. 2004) (affirming dismissal of claim for tortious interference with plaintiff's contractual relationships because it is barred by § 2680(h) of the FTCA); *Jones v. Seiling*, No. 3:19-cv-894-HEH, 2020 WL 877980, at *2 (E.D. Va. Feb. 21, 2020) ("[P]ursuant to the plain language of [§ 2680(h)], the defamation/slander and wrongful/tortious interference with contract expectancy claims, as alleged against the Government, must fail."). Accordingly, federal Defendants are correct that this Court lacks subject matter jurisdiction as to the tortious interference claim.

In his response brief, Plaintiff argues that his "complaint essentially alleges, perhaps not so clearly, that agency attorneys engaged in a tortious conspiracy with Madero and Krug to resolve the cases." (Dkt. No. 48 at 3.) According to Plaintiff, "[t]he attorneys used false representations, disparaging statements and other conduct to undermine the relationship with Madero and Krug to persuade them to shirk their legal obligation to pay Plaintiff." (*Id.*)

To state a claim for civil conspiracy under South Carolina law, Plaintiff must plead facts sufficient to establish "(1) the combination or agreement of two or more persons, (2) to commit an

10

unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). As it stands, even under a liberal construction, the Complaint does not allege a civil conspiracy claim against federal Defendants. (*See* Dkt. No. 1.)

Moreover, while a claim for conspiracy is not expressly exempted from the statutory waiver, such a claim may still be barred if "it arises out of 'conduct that would establish an excepted cause of action.'" *White v. United States*, 5:15-cv-79, 2016 WL 3034095, at *2 (W.D. Va. Apr. 29, 2016) (quoting *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)), *adopted by*, 2016 WL 3042961 (W.D. Va. May 27, 2016); *see also Talbert v. United States*, 932 F.2d 1064, 1066–67 (4th Cir. 1991) ("Artful pleading cannot alter the fact that [plaintiff's] claim 'resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly.' As such, [plaintiff's negligent maintenance] claim is barred under § 2680(h) of the FTCA." (quoting *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982)). Indeed, the statute precludes "[a]ny claim arising out of" the enumerated torts. § 2680(h). As described by Plaintiff, the alleged conspiracy claim arises from federal Defendants' efforts to dissuade Plaintiff's clients to comply with their contractual payment obligations. Accordingly, Plaintiff's conspiracy claim is also barred under § 2680(h) because it arises out of the tortious interference claim. *See White*, 2016 WL 3034095, at *2 ("It is thus inescapable that the conduct giving rise to [plaintiff's] claims for defamation and intentional infliction of emotional distress is the same. Accordingly, both claims fall within the exemption to the waiver of sovereign immunity.").

Based on the foregoing, the undersigned recommends that federal Defendants' Motion to Dismiss be granted for lack of subject matter jurisdiction.[6]

## **CONCLUSION**

Based on the foregoing, the undersigned RECOMMENDS that the Motion to Dismiss filed by Defendants Krug and Madero (Dkt. No. 32) be GRANTED and the Motion to Dismiss filed by Defendants United States of America, Douglas A. Collins, and the Department of Veterans Affairs (Dkt. No. 42) be GRANTED and this case be DISMISSED without prejudice.

    IT IS SO RECOMMENDED.

March 26, 2025

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[6] "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).